UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES, Plaintiff, v. ALFONZO WILLIAMS, et al. Defendant. | Case No. 13-cr-00764-WHO-1 **ORDER GRANTING ANTONIO GILTON'S MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS; GRANTING MOTION TO SEAL** Re: Dkt. Nos. 414, 416, 431 |
|---|---|

The Second Superseding Indictment describes a racketeering case against the Central Divisadero Playas (CDP) gang, an enterprise that promotes and enhances itself through acts of murder, violence, narcotics trafficking, robbery, pimping and other criminal acts. Dkt. No. 139. Proof of membership in CDP is central to the government's ability to prevail in Count One of the Indictment. Defendant Antonio Gilton's motions to suppress, on which I heard oral argument on August 20, 2015, address two pieces of evidence that the government might wish to introduce at trial: Gilton's answer to a booking question from a deputy sheriff at San Francisco County Jail concerning whether he was a member of a gang; and photographs seized from his house in Los Angeles that were allegedly outside the scope of a search warrant.

I agree that both the answer and the photographs should be suppressed. Under the circumstances of this case, the question regarding Gilton's gang affiliation was reasonably likely to elicit incriminating evidence. The question was also inherently coercive, no matter the apparent benign motivation behind it (Gilton's appropriate classification to help protect him in jail). Given that Gilton was being booked for acts that are included in the Indictment after he had asserted his right to counsel, the gang question violated Gilton's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and his response must be suppressed. I also suppress the photographs because they

were not identified in the search warrant. The warrant did not seek information about Gilton's gang activity, and only named specific people for the photographs it sought. The plain view exception does not apply.[1]

## I. MOTION TO SUPPRESS STATEMENTS REGARDING GANG AFFILIATION (Dkt. No. 431)

Gilton was arrested by the San Francisco Police Department on July 4, 2012 and charged in state court with the murder of Calvin Sneed, conspiracy to commit murder, discharge of a firearm at an occupied motor vehicle, and possession of a firearm by a felon. That evening, he was placed in an interrogation room at the Hall of Justice in San Francisco and advised of his *Miranda* rights by a homicide inspector. He asserted his right to have an attorney present and was not questioned. He was then taken to county jail and placed in a locked holding cell.

Around 2:30 a.m. the next morning, Gilton was taken out of his cell and questioned about his gang affiliation to allow the correctional staff to determine where to house him. The questioning was conducted by San Francisco deputy sheriff Maracha, who was not involved in the investigation or prosecution of Gilton. Deputy Maracha did not advise Gilton that what he said could be used against him in court, that he had a right to remain silent and to have an attorney present during the questioning, or that he could return to the holding cell without being interviewed. According to Deputy Maracha, when he asked Gilton whether he was affiliated with Fillmore/CDP, Gilton responded, "Yeah, I hang out there, put me where I'm from." Deputy Maracha checked a box labeled "Direct admission of gang membership" in the Sheriff Department's classification report. Deputy Maracha also indicated that Gilton was a gang member and was affiliated with Fillmore/CDP in a separate questionnaire.

On November 21, 2013, while still incarcerated, Gilton was indicted in this matter by the United States and charged with being part of a RICO conspiracy under 18 U.S.C. § 1962(d) as well as the same murder charged in the state case, and related crimes. His state prosecution was

---

[1] Gilton moves to seal exhibits 3 and 4 in support of his motions to suppress statements and exhibits 3-5 in support of his motion to suppress evidence. Dkt. No. 414. The exhibits consist of confidential material related to the investigation of this action. The motion to seal is GRANTED.

dropped in favor of the federal prosecution. Gilton seeks to suppress his statements to deputy Maracha regarding his gang affiliation, contending that *Miranda* bars the use of the statements against him because he had previously asserted his right to counsel and did not have counsel present during the questioning at issue.

Under *Miranda*, statements made during custodial interrogation are inadmissible unless the defendant has been warned of his rights and has either waived or failed to invoke them. *See Miranda v. Arizona*, 384 U.S. 436, 467-71 (1966). However, there is an exception to *Miranda* for routine booking questions. *See e.g., United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983) (noting routine booking exception and explaining that "it arises because background questions rarely elicit an incriminating response"). The issue in Gilton's motion to suppress is whether the booking exception applies to the gang question.

Under the circumstances of this case, the booking exception does not apply. I find two recent cases, while not controlling, instructive. In a RICO gang prosecution last year, the Hon. Susan Illston suppressed similar booking statements. *United States v. Ortiz, et al.,* No. 12-cr-00119 SI, Dkt. No. 1167 (N.D. Cal. July 9, 2014) (order re admissions at classification interview). She explained that "where a large part of the government's burden at trial involves proving that these defendants were members of a RICO enterprise, admitting defendants' un-*Mirandiz*ed admissions of gang membership would be patently unfair." Similarly, in *People v. Elizalde*, 61 Cal. 4th 523, 538-539 (2015), the California Supreme Court held that routine booking questions about gang affiliation, posed to a defendant while processing him into jail on murder charges, triggered *Miranda* because of California's comprehensive scheme of criminal gang statutes and the defendant's pending charges.

The government argues that those cases are distinguishable because the defendants in them faced pending gang charges at the time of the questioning. The defendants in *Ortiz* were arrested for participation in a gang alleged to be a RICO enterprise and the defendant in *Elizalde* was charged with murder and participation in a criminal street gang with knowledge that the gang commits murder. That is a distinction: at the time of the statements at issue, Gilton was charged with murder, conspiracy to commit murder, discharge of a firearm at an occupied motor vehicle,

3

and possession of a firearm by a felon, not with any gang charges. But under these circumstances, it is not determinative that Gilton was not facing gang charges when he was questioned about his gang affiliation. *Cf. United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981) ("it is relevant, but not determinative, that a question posed was not related to the crime or the suspect's participation in it"). Nor is it dispositive that deputy Maracha was not involved in the investigation or prosecution of Gilton, or had a benign intent. What matters is whether deputy Maracha should have known that the questioning was reasonably likely to elicit incriminating information. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Consider the circumstances: Gilton was indicted for murder, conspiracy to commit murder, and associated crimes. Those are crimes frequently committed for the benefit of criminal street gangs. *See, e.g., Elizalde*, 61 Cal. 4th at 540 (noting that murder is "a crime frequently committed for the benefit of criminal street gangs"). The clarity of hindsight was hardly necessary for deputy Maracha to suspect that Gilton might someday soon face a RICO count that uses the same charges he was facing then as overt acts. Deputy Maracha should reasonably have known that asking about Gilton's gang affiliation was reasonably likely to elicit incriminating information.

Further, deputy Maracha's question was inherently coercive: to protect himself Gilton had pressure to answer the gang question. While the question may be legitimate, the answer should not be used both to protect and convict the defendant. A defendant should not be faced with a Hobson's choice of telling the truth and giving evidence that will be used against him at trial or lying and being placed at risk in the general population of the jail.

The government argues that the questioning here consisted of routine biographical information and does not trigger *Miranda*. In support, the government cites *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006), where the Ninth Circuit held that questions regarding an inmate's gang moniker fit within the routine booking exception to *Miranda*. But *Washington* is a different case. There, the Ninth Circuit likened questions about the defendant's gang moniker to questions about his nickname and concluded that "[a]sking about a nickname, even if it is for identification purposes, is no different from simply asking for a suspect's name."

4

*Washington*, 462 F.3d at 1133.  In contrast, the questioning here relates to Gilton's gang affiliation, part of the proof in the RICO conspiracy count.  As the California Supreme Court wrote in *Elizalde*:

> Gang membership, standing alone, is not a crime.  Nonetheless, as the Supreme Court made clear in *Miranda*, "[n]o distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense.  The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination."  Indeed, the high court has recognized that "the Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."

61 Cal. 4th at 539 (citations omitted).

The gang question to Gilton was likely to reveal incriminating information.  For that reason, it was outside of the routine booking question exception.  *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1046 (9th Cir. 1990) (routine booking exception did not apply where questioning was likely to incriminate the defendant).

It may well be important for correctional officers to ask defendants about their gang affiliation during the booking process to reduce the potential for violence among rival gangs in jail.  But the prosecution cannot then use the defendants' un-*Mirandized* statements against them at trial where the officer should have known that the question was reasonably likely to elicit incriminating information.  That is why Gilton's motion to suppress his statements to deputy Maracha regarding his gang affiliation is GRANTED.

**II.   MOTION TO SUPPRESS EVIDENCE OUTSIDE SCOPE OF SEARCH WARRANT (Dkt. No. 416)**

On July 3, 2012, a search warrant issued from the California Superior Court for the City and County of San Francisco concerning Gilton's residence in Los Angeles, authorizing a search for various categories of property.  Gilton moves to suppress 11 photographs seized from his residence, arguing that they are outside the scope of the warrant and do not fall within the "plain view" exception applicable to searches.  The government responds that the photographs are within the scope of two categories of property listed in the search warrant: (i) photographs of Alfonso

5

Williams, Barry Gilton, Antonio Gilton, and Lupe Mercado and (ii) articles of personal property belonging to Antonio Gilton, tending to establish the identity of control of premises. The government also argues that the photographs are subject to the "plain view exception" to the warrant requirement because they are indicative of gang activity and were discovered in plain view during the course of a lawful search. As I explain below, none of those arguments has merit.

**A. The majority of the photographs were beyond the scope of the warrant.**

"Generally, in a search made pursuant to a warrant, only specifically enumerated items may be seized." *United States v. Giberson*, 527 F.3d 882, 886 (9th Cir. 2008) (citations omitted). Seizure of items beyond the scope of the warrant is unconstitutional and subject to suppression. *See Horton v. California*, 496 U.S. 128, 140 (1990); *see also United States v. W. Titanium, Inc.*, 2010 WL 3768174 (S.D. Cal. Sept. 22, 2010) (suppressing evidence seized outside the scope of search warrant).

The search warrant authorized police to search eight categories of property; the government points to two that are applicable here. Category 7 is "Photographs of Alfonso Williams, Barry Gilton, Antonio Gilton, and Lupe Mercado, any digital cameras or digital images." The government contends that Gilton appears in "several" of the photographs, but does not state which ones. Millspaugh declaration in opposition to Gilton motion to suppress evidence ¶ 5 [Dkt. No. 445]. According to Gilton, he only appears in the two photographs on BG002888. The government does not dispute this or contend that Williams, Barry Gilton, or Lupe Mercado appear in the photographs. Accordingly, only the two photographs on BG002888 are within category 7.

Category 8 is "Articles of personal property belonging to Antonio Gilton, tending to establish the identity of control of premises, storage areas or containers located at subject premises." The government argues that the photographs fit within this category because they depict the residents, Gilton and his wife, and individuals associated with them.

I am not convinced. It is unclear that the photographs belong to Gilton or why the government believes the photographs establish the identity of control of the premises. The photographs depict individuals other than Gilton in various social settings, but not at the premises.

6

Even assuming that Gilton (as opposed to the other two people living at the premises) owns the photographs and that the photographs depict individuals associated with Gilton and his wife, they do not tend to establish the identity of those controlling the premises.

The government also argues that, under *United States v. Leon*, 468 U.S. 897, 914 (1984), the evidence should not be suppressed because the officers conducting the search relied on the warrant in good faith. In *Leon*, the Supreme Court held that the Fourth Amendment exclusionary rule should not bar use of evidence obtained by officers acting in good faith reliance on a search warrant ultimately found to be invalid. *See Leon*, 468 U.S. at 922 ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."). But the photographs at issue here are suppressed because they are outside the scope of the warrant, not because the warrant was invalid. *Leon* is inapposite.

### B. The plain view exception does not apply.

The government argues that even if the photographs were outside the scope of the warrant, their seizure should be upheld under the plain view doctrine because they were "clearly and obviously indicative of gang activity and discovered in plain view." Dkt. No. 445 at 6. In support of its argument, the government provided the declaration of FBI Special Agent Jacob Millspaugh, who states that the photographs depict gang members and individuals making gang signs for associated with CDP (of which the defendants are alleged members). Dkt. No. 445 ¶ 5.

"The 'plain view' exception requires: (1) that the initial intrusion must be lawful; and (2) that the incriminatory nature of the evidence must be immediately apparent to the officer." *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000). Special Agent Millspaugh was not present at the search. The government offered no evidence that the agents involved in the search recognized the gang signs or the individuals in the photographs. The government has not established that the incriminating nature of the photographs was immediately apparent to any officer conducting the search. The plain view doctrine does not apply. *See, e.g., United States v. Guevara*, 745 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (rejecting plain view argument and suppressing evidence where "[t]here is no indication that the officers actually perceived the

7

1  ammunition to be *per se* illegal ammunition").

## CONCLUSION

For the reasons stated, Defendant Gilton's motions to suppress are GRANTED. Dkt. Nos. 416, 431. His motion to seal is also GRANTED. Dkt. No. 414.

**IT IS SO ORDERED**.

Dated: September 1, 2015



WILLIAM H. ORRICK
United States District Judge